CoStar Realty Information, Inc. et al v. Copier Country New York LLC et al Doc. 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

COSTAR REALTY INFORMATION, INC.,
2 Bethesda Metro Center, 10th Floor
Bethesda, Maryland 20814,

and

COSTAR GROUP, INC.,
2 Bethesda Metro Center, 10th Floor
Bethesda, Maryland 20814,

Plaintiffs,

v.

COPIER COUNTRY NEW YORK LLC,
17 Battery Place, Suite 1013
New York, NY 10004, and

DUMANN REALTY
235 W. 23rd Street, 5th Floor
New York, NY 10011

Defendants.

Civil Action No. ________________

**COMPLAINT**

Plaintiffs COSTAR REALTY INFORMATION, INC., a Delaware Corporation, and COSTAR GROUP, INC., a Delaware Corporation (collectively "CoStar" or "Plaintiffs"), for their Complaint against Defendants COPIER COUNTRY NEW YORK LLC ("COPIER COUNTRY") and DUMANN REALTY ("DUMANN"), allege as follows:

Dockets.Justia.com

## PARTIES

1. CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, Maryland 20814-5388.

2. CoStar Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, Maryland 20814-5388.

3. Defendant COPIER COUNTRY is a limited liability company whose principal place of business is 17 Battery Place, Suite 1013, New York, NY 10004.

4. Defendant DUMANN is a business whose corporate form is unknown to Plaintiffs, with its principal place of business at 235 West 23rd Street, 5th Floor, New York, NY 10011.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 as an action that arises under the laws of the United States. The Court further has exclusive federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act. This Court has subject matter jurisdiction over CoStar's claims for unauthorized access to computers and related claims pursuant to 18 U.S.C. § 1030.

6. This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. The controversy is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of Maryland pursuant to 28 U.S.C. § 1367(a) because these claims are so related to

Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

8. Personal jurisdiction over DUMANN is proper in this District because: (a) by agreeing to the Terms of Use for the www.costar.com website, DUMANN has consented to the jurisdiction of this Court; (b) DUMANN has committed tortious and other actionable acts alleged herein with foreseeable consequences in this District, and has caused actual tortious injury in this District; and (c) DUMANN has purposefully directed its unlawful behavior at this District by repeated electronic activity and interaction with CoStar's computer servers in Bethesda, Maryland, when logging into the subscription service at the www.costar.com website for business purposes.

9. Personal jurisdiction over COPIER COUNTRY is proper in this District because: (a) by agreeing to a license agreement with CoStar, COPIER COUNTRY agreed to be subject to the jurisdiction of Maryland courts; and (b) COPIER COUNTRY has committed tortious and other actionable acts alleged herein with foreseeable consequences in this District, and has caused actual tortious injury in this District.

## BACKGROUND

10. CoStar is a leading national commercial real estate information services provider. At enormous effort and expense, CoStar has created state-of-the-art software technology and research methods to develop one of the most comprehensive commercial real estate information databases available. CoStar currently employs the services of approximately 800 trained research professionals,

including a field research force with over 120 research photographers and a fleet of over 100 specially equipped field research vehicles, that canvass the country, building information and analysis and photographs that are integrated into an enormous database that is updated daily.

11. CoStar's photographs and the other information in CoStar's databases are not part of a repository of information generally available for free. CoStar licenses its information services to businesses, including primarily commercial real estate brokers, asset managers, mortgage lenders, investors, owners, property managers, security analysis, REIT professionals and appraisers/mortgage underwriters. CoStar's information licenses, among other things, enable its licensees to find for themselves or their clients available space for tenants, to match buyers to properties for sale, find tenants, research brokers, locate market-related information, and to value commercial real estate sales transactions. CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs. CoStar's licensees can search through CoStar's information in thousands of different ways to analyze various real estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

12. With the exception of a very limited amount of its information services CoStar makes available for no charge on the Internet at http://www.CoStar.com, access to CoStar's information services is offered only to authorized users. Interested members of the general public can become authorized users either (a) by entering into an online agreement for *ad hoc* access and use, or (b) by entering into a written license agreement and subscribing to one or more of CoStar's information services.

13. Access to CoStar's subscription information services and their associated databases is limited to those authorized users who gain authorization solely pursuant to written license agreements, which limit their access and use of CoStar's databases to specific numbers of licensed users and licensed sites. Licensed users are limited to employees of the licensee, or independent contractors working out of the licensed site and exclusively for the licensee.

14. Once a party executes a license agreement with CoStar, each of its authorized users is provided with a user identification and password and is given authorized use for Internet-based access to CoStar's subscription information services within the terms of the user's specific license. An authorized user must input a valid user identification and password at the "Subscriber Login Area" to gain authorized access to CoStar's restricted access information services for which they are licensed.

15. The Subscriber Login Area contains prominent notices advising the user on each occasion of their use: "By logging in you are agreeing to CoStar's <u>terms of use</u>." and "Access restricted to licensed users. Sharing of passwords is prohibited." The authorized user must scroll through and "accept" the applicable online Terms of Use the first time they use the product as well as at periodic intervals thereafter. Furthermore, a warning appears at the bottom of the homepage that reCOPIER COUNTRY: "By using this site, you agree to our <u>Terms of Use</u>." Here too, by clicking on the underlined phrase, the user can view the terms of use.

16. The Terms of Use provide:

> By accessing or using this Site (or any part thereof), you agree to be legally bound by the terms and conditions that follow (the "Terms of Use") as we may modify them from time to time. These Terms of Use apply to your use of this Site, including the CoStar services and products offered via the Site. **<u>They constitute a legal contract between you and CoStar, and by accessing or using any part of the Site you represent and warrant that you have the right, power and authority to agree to and be bound by these Terms of Use.</u>** If you do not agree to the Terms

> of Use, or if you do not have the right, power, and authority to agree to and be bound by these Terms of Use, you may not use the Site. (emphasis added).

17. In addition, the Terms of Use specifically note that "[p]ortions of the [website] are available only to individuals or entities who purchase a subscription ('Subscribers') and who, as specified in these Terms of Use and/or in the associated written license agreement between the Subscriber and CoStar that authorizes use of the information or product(s) (the 'License Agreement'), are Authorized Users (as defined below) under such a subscription."

18. Under the header "Prohibited Uses," the Terms of Use provide that "you shall not ... [a]ccess any portion of the [databases] unless you are an Authorized User for such [databases] using the Passcodes assigned to you by CoStar to access the components and services of the [databases] that your subscription authorizes you to access, subject to the terms contained therein and in these Terms of Use."

19. The Terms of Use also state that "[u]pon your breach of any term of these Terms of Use or the License Agreement, CoStar's remedies shall include any monetary benefits that accrued to you as a result of the breach, any damages incurred by CoStar related to your breach and any other damages and relief available at law or in equity." The terms of use further provide that "CoStar shall be entitled to recover all costs, including attorney's fees."

20. Finally, the Terms of Use provide that the user irrevocably consents to the jurisdiction of the federal and state courts located in the State of Maryland for any action to enforce these Terms of Use.

**EVENTS GIVING RISE TO THE LAWSUIT**

21. DUMANN signed a minimum two year License Agreement with CoStar in April 2005 for access to the CoStar PROPERTY PROFESSIONAL® commercial real estate information databases

and related software for the New York City market. That license provided for access by fifteen different commercial real estate professionals associated with DUMANN, at a price of more than $2,200 per month. After using CoStar PROPERTY® for its initial two-year term, DUMANN cancelled its CoStar subscription in February 2007, with an effective date of the end of April 2007.

22. In September of 2007, DUMANN contacted CoStar about a subscription to CoStar's products. At that time, DUMANN's principal, Richard Du, claimed that he had set up a "separate" entity that would like to license CoStar. Du proposed that this "separate" entity would have a dramatically lower number of authorized users and thus would pay a dramatically lower license fee. Recognizing that this alleged "separate" entity was based in the same offices as DUMANN and shared facilities such as a fax line, CoStar's sales representative flatly refused to license to this alleged "separate" entity and reiterated to DUMANN the need for all commercial real estate professionals to be licensed.

23. On October 2, 2007, CoStar received an unsolicited call from a person named Sal Javed at COPIER COUNTRY, a New York City-based copier supplier company. According to CoStar's records, Mr. Javed stated that he had seen the online demonstration of CoStar's products and desired a subscription to PROPERTY PROFESSIONAL® for New York City – the same product that DUMANN previously licensed. Mr. Javed claimed that he wanted the PROPERTY PROFESSIONAL® product because he was going to do "investment work."

24. CoStar's salesperson referred the call to another sales representative, who called COPIER COUNTRY the same day. During that call, Mr. Javed requested a license agreement. However, instead of the fifteen different authorized users licensed by DUMANN, COPIER COUNTRY would have only two authorized users. CoStar sent an agreement to COPIER COUNTRY consistent with Mr.

Javed's representations – a two-user license to PROPERTY PROFESSIONAL® for New York City. The agreement quoted a price of $588 per month. Mr. Javed signed the agreement and dated it October 2, 2007 – the same day as his two calls with CoStar sales representatives.

25. Upon information and belief, almost immediately after CoStar provided access to COPIER COUNTRY, DUMANN began to access CoStar's products using COPIER COUNTRY's user names and passwords. Indeed, CoStar has electronic information indicating that the very same computer network used by DUMANN to access CoStar through its own account has been used to access COPIER COUNTRY's account.

26. Under Sections 1, 2 and 12 of COPIER COUNTRY's License Agreement with CoStar, COPIER COUNTRY agreed, among other things: (a) not to provide third parties with access to or use of the CoStar database service, (b) not to sub-license or resell CoStar's information services to others, (c) not to share the COPIER COUNTRY-specific IDs and passwords assigned by CoStar, and (d) not to store, copy or export any portion of the licensed CoStar database service into any database or other software program, except as explicitly permitted by the CoStar-Resource License Agreement or by express written consent of CoStar.

27. In violation of these provisions in COPIER COUNTRY's License Agreement with CoStar, DUMANN obtained the user names and passwords attributed to COPIER COUNTRY and then used such user names and passwords to access and use CoStar's commercial real estate information subscription services for DUMANN's commercial purposes without authorization from CoStar. As a result of its illicit access to COPIER COUNTRY's license, DUMANN did not acquire a valid license from CoStar.

28. By gaining unauthorized access to CoStar's products, DUMANN was able to make unauthorized copies and displays of CoStar's copyrighted databases and copyrighted photographs.

**COUNT I**
**BREACH OF CONTRACT BY COPIER COUNTRY**

29. CoStar re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 28 of the Complaint.

30. The License Agreement between COPIER COUNTRY and CoStar is a valid contract.

31. COPIER COUNTRY breached the License Agreement by providing, either directly or indirectly, CoStar user names and passcodes to DUMANN, which then accessed and used the CoStar database service without CoStar's authorization or consent.

32. CoStar has been injured by COPIER COUNTRY's breaches as described above. Among other things, COPIER COUNTRY's breach of contract has caused CoStar to lose the license fee revenue associated with granting a license to DUMANN. Some of CoStar's injury as a result of COPIER COUNTRY's breaches resulted in damages to CoStar in an amount to be proven at trial. CoStar will not have an adequate remedy at law for its entire injury, however, as some of its injury is irreparable. Accordingly, CoStar is entitled to damages and injunctive relief.

**COUNT II**
**BREACH OF CONTRACT BY DUMANN**

33. CoStar re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 28 of the Complaint.

34. By accessing CoStar's Internet website, DUMANN agreed to be bound by the terms of use agreement of CoStar's website. CoStar's website terms of use agreement is a valid contract.

35. DUMANN breached the terms of use agreement by, *inter alia*, accessing and using the CoStar databases through COPIER COUNTRY's account without authorization from CoStar.

36. CoStar has been injured by DUMANN's breaches as described above. Among other things, DUMANN's breach of contract has caused CoStar to lose the license fee revenue associated with granting it a license to CoStar products. Some of CoStar's injury as a result of DUMANN's breach resulted in damages to CoStar in an amount to be proven at trial. CoStar will not have an adequate remedy at law for its entire injury, however, as some of its injury is irreparable. Accordingly, CoStar is entitled to damages and injunctive relief.

**COUNT III**
**COPYRIGHT INFRINGEMENT BY DUMANN**

37. CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 28 of the Complaint.

38. CoStar owns valid copyrights in the compilations of data, information, and original content that form its databases of commercial real estate property information. CoStar has registered its copyrights in those compilations with the United States Copyright Office on a regular basis.

39. CoStar also owns valid copyrights in millions of commercial real estate photographs taken by CoStar photographers. CoStar has registered the vast majority of those photographs with the United States Copyright Office on a quarterly basis.

40. By virtue of its unauthorized access to CoStar's products, DUMANN has infringed CoStar's copyrights in its commercial real estate photographs, including by reproducing, distributing and/or displaying such photographs. Upon information and belief, DUMANN has infringed CoStar's copyrights to hundreds if not thousands of different photographs. A set of examples of these

photographs, as well as the copyright registration numbers corresponding to such photographs, is attached hereto as Exhibit A.

41. DUMANN's infringement of CoStar's copyrights was willful and with notice of CoStar's copyrights in its database compilations and its photographs.

42. Because CoStar registered its copyrights in the database compilations and commercial real estate photographs infringed by DUMANN prior to its infringement and/or within three months of the publication of such copyrighted works, CoStar is entitled to an award of statutory damages of no less than $750 and up to $150,000 per work, as well as the attorney's fees and costs of prosecuting this action.

43. As a result of DUMANN's infringement, CoStar has suffered an injury for which there is no adequate remedy at law and that requires injunctive relief.

**COUNT IV**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT BY COPIER COUNTRY**

44. CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 44 of the Complaint.

45. As set forth in Paragraphs 37 through 44, DUMANN has infringed CoStar's copyrights.

46. COPIER COUNTRY, by virtue of the fact that it had possession of CoStar user names and passcodes, had access to CoStar products and CoStar's Internet website. By providing such CoStar user names and passcodes to DUMANN, COPIER COUNTRY materially contributed to DUMANN's infringement of CoStar's copyrights.

47. COPIER COUNTRY directly or indirectly provided such CoStar user name and passcode with knowledge that DUMANN would use such user name and passcode to access CoStar's Internet website and thus infringe CoStar's copyrights.

48. As a result of COPIER COUNTRY's conduct in facilitating and materially contributing to DUMANN's infringement of CoStar's copyrights, COPIER COUNTRY is liable for contributory copyright infringement. COPIER COUNTRY's contributory infringement was willful.

49. Because CoStar registered its copyrights in the database compilations and commercial real estate photographs infringed by DUMANN prior to his infringement and/or within three months of the publication of such copyrighted works, CoStar is entitled to an award of statutory damages of no less than $750 and up to $150,000 per work, as well as the attorney's fees and costs of prosecuting this action, pursuant to 17 U.S.C. § 501 et seq. COPIER COUNTRY is responsible for such statutory damages as a joint tortfeasor with DUMANN.

50. As a result of COPIER COUNTRY's infringement, CoStar has suffered an injury for which there is no adequate remedy at law and that requires injunctive relief.

## COUNT V
## FRAUD BY COPIER COUNTRY AND DUMANN

51. CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 28 of the Complaint.

52. As alleged above, on information and belief, COPIER COUNTRY obtained its license to make authorized access to CoStar's database by fraud and deceit when it failed to identify the true purposes it intended to make of the authorized user identifications and passcodes it was provided pursuant to the License Agreement. COPIER COUNTRY made representations to CoStar and its employees and agents that it would limit its use of the licensed CoStar products to its employees or independent contractors working exclusively for COPIER COUNTRY.

53. DUMANN accessed CoStar's database and products by fraud and deceit when its employees identified themselves as COPIER COUNTRY authorized users by using the user names and

passcodes assigned to COPIER COUNTRY by CoStar. Had CoStar been aware that DUMANN was using COPIER COUNTRY's user names and passcodes, CoStar would have denied such access.

54. Defendants' fraudulent conduct, has been improper, willful, wanton and/or in reckless disregard of CoStar's rights. Defendants have been unjustly enriched as a result of their unauthorized access. Defendants' conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, CoStar is entitled to damages (including punitive damages) and injunctive relief.

**COUNT VI**
**VIOLATION BY DUMANN OF § 18 U.S.C. 1030:**
**FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS**

55. CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 28 of the Complaint.

56. The computer system on which CoStar's databases reside is a computer used in interstate commerce or communication, and is thus a protected computer under 18 U.S.C. § 1030.

57. When DUMANN accessed the password-protected portions of the CoStar Internet website, DUMANN intentionally accessed a protected computer without authorization.

58. DUMANN's unauthorized access of a protected computer has caused damage to CoStar that has amounted in an aggregated loss of over $5,000 during a one-year period.

59. DUMANN's conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses, damages, and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by DUMANN. Accordingly, CoStar is entitled to damages and injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE,** CoStar asks that this Court:

(1) Enter a judgment against Defendants that they have breached their contracts with CoStar;

(2) Grant a preliminary and permanent injunction (a) restraining and enjoining Defendants and any of its principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, from (i) making any unauthorized access to or use of any CoStar database service, (ii) interfering with CoStar's current or prospective contracts pertaining to use and access of any CoStar's database, and (iii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ii) above; and (b) ordering Defendants and any of their principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with Defendant, to permanently delete and destroy all portions of any CoStar database service within their possession, and within ten (10) days provide CoStar with a signed affidavit certifying completion of such deletion/destruction;

(3) Enter judgment against Defendants and in favor of CoStar for disgorgement of any amounts by which they were unjustly enriched;

(4) Enter judgment against Defendants and in favor of CoStar for compensatory damages;

(5) Enter judgment against Defendants and in favor of CoStar for punitive damages;

(6) For an award of statutory damages of no less than $150,000 per copyrighted work as a result of Defendants' willful infringement of CoStar's copyrights.

(7) For an award of the costs of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and other applicable laws.

(6) Enter judgment against Defendants and in favor of CoStar for prejudgment interest, costs and attorneys' fees; and

(7) Grant CoStar such other and further relief as is just.

Dated: December 29, 2008

Respectfully submitted,

______/s/______________________________

Shari Ross Lahlou, Bar. No. 16570
William J. Sauers, Bar No. 17355
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 624-2500
Facsimile (202) 628-5116

Attorneys for Plaintiffs CoSTAR REALTY INFORMATION, INC., a Delaware Corporation, and CoSTAR GROUP, INC., a Delaware Corporation

EXHIBIT A

| Address | Registration Number | Registration Date |
|---|---|---|
| 234 W. 42nd St., New York, NY 10036 | VA0001344772 | 12/1/2005 |
| 148 Lafayette St., New York, NY 10013 | VA0001344772 | 12/1/2005 |
| 129 W. 29th St., New York, NY 10001 | VA0001391991 | 10/6/2006 |
| 469 Seventh Ave., New York, NY 10018 | VA0001344772 | 12/1/2005 |
| 870 Seventh Ave., New York, NY 10019 | VA0001637092 | 11/15/2007 |
| 233 W. 49th St., New York, NY 10019 | VA0001391872 | 10/6/2006 |